Mr. Rhodes and Mr. Becker Good morning, may it please the court, my name is Mark Rhodes, I'm counsel for the plaintiffs, below the appellants here, Donald Haviland Jr., the Haviland Law Firm, and Haviland Hughes. Do you wish to reserve any time for rebuttal? Yes, request two minutes for rebuttal. That's fine. Let me start off, you suggest or contend that the district court, there's a question as to whether the district court has inherent power to enter a sanction, but what about our Angelico case from, I guess, 1999? Your Honor, the issue about whether the district court has inherent power to issue sanctions, there is no dispute that the district court has power, the inherent power, to issue sanctions for actions that occurred before the court. The problem is that by issuing sanctions in this case, when there were other avenues available to both the court as well as to the... Wait, wait, wait. You concede that the court has inherent powers even with respect to this kind of conduct, not simply something that unfolds in front of a judge in a courtroom or something akin to that? I do not concede that. There is no concession that, let me be clear, there's no concession that given the facts before the district court in this case that the district court had inherent power to sanction Mr. Haviland as well as the plaintiff law firm. So how is this case different from Angelico? This case is different because in this case, the district court specifically stated on the record to counsel for the defendants that the better course of action here was to apply Rule 11. That, of course, does not resolve the substantive issue, though, of whether or not there was inherent power, and Judge Ambrose has asked you about the Angelico case. So what's the difference? The difference is that in this case, there was a abandonment of the right to pursue Rule 11 sanctions both by the court as well as the... How could a court abandon it? Because under Rule 11, it's clear in the rule that if the court wants to raise sanctions issues under Rule 11, that the issue must be raised prior to the voluntary dismissal of the case. You're talking about Pensiero, but let's go back to Angelico. I still don't understand how... There was a motion to dismiss there, and the court entered sanctions pursuant to its inherent power in our court approval, correct? Correct. So why is that not our case? How does Pensiero change that? It's not Pensiero, Judge Ambrose. It's the actual text of the rule of Rule 11 that says that Rule 11... You continue to resort to Rule 11 as if it is the exclusive means, and clearly we do not have an invocation of Rule 11 here by the defendants. We are ruling by the district court. I thought what they said was 1928 U.C., 1927 and or inherent power, correct? And they sought that throughout, didn't they? Only in the letter to Judge Wilson did they not explicitly set out inherent powers. In both of the motions and briefing that I've looked at as recently as this morning, they've invoked 1927 and inherent powers, right? They invoked it until the day of the hearing, Your Honor. And that goes to the second point I wanted to talk about. Which means they have to stand up at the hearing and say, look, I'm no longer asking for X and Y. They didn't do that, did they? I mean, they may have backed off of 1927. They never backed off of inherent power, did they? They never did, Your Honor. They never backed off of the inherent powers. In effect, what she's also doing here is she's saying, look, what really troubled her was that Morris v. Hoffa was brought to the attention of your side and you didn't acknowledge it. And then in the briefing or at the first hearing, then you have this hearing, you can see that Morris v. Hoffa really put a nail in your case because of the statute of limitations. Your Honor, if I may address that, as my former colleague Steve Berlowski said in the argument, there's another string to his bow. We had three strings to our bow with regard to the statute of limitations in regard to RICO. The first one was that we filed, that there was a written summons filed in the court of common pleas that told Morris v. Hoffa knocks the knees out of that argument. No dispute. We never, we never argued contrary to Morris v. Hoffa in any of our briefing. We had two other, we had two other strings to our bow. Judge Wilson addressed one, but she didn't address the second one. She did not address our argument under O'Shyver. So she decided, we believe, contrary to the evidence, that the RICO claim was time barred because of Morris v. Hoffa only. She did not address the issue as to whether the equitable polling as identified by this court in the O'Shyver case applied. And we raised that issue on page 800 of the record. Okay, but you've got a concession at the hearing that Morris v. Hoffa was a, in effect, a fatal blow. Potentially. And how in the world does a continuing violation under O'Shyver somehow, in your case, extend the statute of limitations that really began, I guess, in 06, didn't it? At the latest, at the latest, it was 06. The statute of limitations began running on September 9, 2004. That is when the statute of limitations began running. Okay, well then it goes back even further then. So September 9 of 04, so it's a four-year statute, right? Correct. So September 9 of 08, and when did you bring this action? This action was committed September 6, 2012. But the issue is that the writ of summons in the Philadelphia Court of Common Pleas was filed September 3, 2008. But you never followed up on it, did you? The case remains staked to this day, Your Honor. Because of the, do you agree to the arbitration? There was an agreement of the arbitration, yes. So then there were two arbitrations, correct? There was one arbitration, and then there was a, the arbitration was reopened based upon allegations of fraud, which were not approved. And Judge, Judge Wolfson essentially declared, did declare that what you were doing was forum shopping, by going to New Jersey, New Jersey. Is that a finding of fact? I don't know what her finding, these are the facts that I know she found. I don't think she found that fact. She said it, that's what she said. She said it, but she didn't say it's a finding of fact. I think that her findings of fact are contained solely within her work. How could it be a conclusion of law? I don't know that, I haven't used forum shopping. Does that have to be a factual finding? Well, I don't think it's a conclusion of law. Your record is unclear as to whether Judge Wolfson found that as a fact. The only thing that we have in writing from Judge Wolfson is her work. If she said it, she found it. It's the height of semantics, right, to say she said something, but she didn't find it. Would you agree to that? I agree. If she said it, she found it. I would agree if she said it. That is her conclusion that she made. Okay, so she makes this conclusion. I'm asking, how could it not be a factual conclusion, or a factual finding? The judge saying that party X is forum shopping is a legal conclusion? I'm not saying that, Your Honor. I'm saying that she said from the bench she had concluded that the plaintiff had forum shopping. We object to that. I denied that to her as soon as she said it. But in her order, it is not merely the use of decrical language that she resorts to. Preliminarily, she says, among other things, relying exclusively upon the court's inherent power, the court having heard the arguments of parties on the record, and having found on the record that plaintiffs acted in bad faith. That clearly suggests, does it not, that her findings were made during the hearing, on another record, not within the decrital provisions of this order. She's saying she made findings, right? That is what she is saying, Your Honor. We contend that the finding is an error because we were not allowed to present testimony and facts. All right. What principle of law or procedural rule provided you with the right to an evidentiary hearing? The Fifth Amendment of the United States Constitution, the Due Process Clause. And particularly with regard to an inherent power. I don't see that language in the Fifth Amendment, but an evidentiary hearing. Because all kinds of proceedings go on in Article III courts across the country that are not evidentiary in nature. And, Your Honor, in addition to the hearing. Let's stay on that. I'm interested because after almost 30 years as a judge, most of which was as a trial judge, I conducted all kinds of proceedings that were effectively, implicitly, by stipulation. Counsel stood up in front of me and made arguments, some of which were factional in nature, and nobody raised an objection. And I was to make determinations based upon what two lawyers told me. There's nothing inherently wrong with that, is there? And if there is, it's up to counsel to begin to pose an objection to it, right? Your Honor, the key factor to the factual predicate you just laid out was that the parties consented or stipulated to that process. I said implicitly. Well, in this case, we specifically requested a hearing so that we could show the judge. And she did not provide you one, but you didn't interpose subsequent objection to that, did you? Your Honor, it's because of the fact that we did not get a particularized note with regard to what the sanctions were being sought. Let's assume for the moment you're right. Where did you bring this up before the district court? And what evidence did you say you would proffer? What evidence did you tell her you would proffer? And what evidence do you proffer in your brief? Because I see none. The evidence that we offer is that there was a representation in the briefing as to what Mr. Haviland would have testified with regard to his knowledge of the case and the history of the case. I missed that. I mean, please tell me where it is because I missed the proper as to what you would have offered or what he would have testified to had you had an inventory. And what I missed is whether you brought up the due process concern that you purportedly have for the district court at all. Your Honor, we did not seek reconsideration from the court, from the district court. We filed. I'm asking, where did you bring up the due process concern before the district court? We asked in our correspondence to the court in April in response to the defendant's request to continue the pressing of the sanctions motion that we have a hearing on that. That is where we raised the concern. Okay, so you asked for a hearing and then you had this matter before Judge Wolfson. Did you bring up when you appeared before Judge Wolfson when she gave the $2,500 sanction, what she thought was de minimis? Yes, Your Honor. We did not bring it up at that time. Well, then if it's such a big issue, why didn't you bring it up at that time? Because, Your Honor, we walked into a hearing that day scheduled for a 1927 and an inherent power sanctions motion. The inherent power sanctions motion, inherent powers are exercised in egregious cases. Wait a minute, time out. This was not a scheduling conference, right? No, this was according to the notice that we received from the court. It was argument, and I'm reading from page 925 of the record. You received an email from the court, right? Correct. Please be advised the court has scheduled argument on the previously filed motion for sanctions for July 17th. We prepared the particularized notice we received where there was going to be an argument. I see my time is up. Go ahead. We received notice that there was going to be an argument on a motion under inherent powers in 1927. 1927 touches and concerns the entire history of the underlying arbitration, I'm sorry, the underlying arbitration of the Writ of Summons and the good faith basis we had for proceeding with the RICO claim. We walk into court, we're told that 1927 is off the table. The only thing left is inherent powers. Inherent powers cases are egregious cases. This is not an egregious case. That's the crux of the argument. This case doesn't rise to that level. Well, there's two cruxes to the argument. The facts don't indicate it's an inherent powers case, and number two, because there are other rules that apply to govern this alleged conduct. Rule 11 was better. Rule 11 was better. Judge Wilson said that. She said it. She said it provided safe harbor, and let's not lose sight of the fact. The complaint was withdrawn voluntarily without any safe harbor provision. Why was a hearing required when Judge Wilson made it clear that her sanctions hearing was on the purely legal question of whether the RICO claim was time barred? Because the issue of whether the RICO claim was time barred, it turns on the issue of the O'Sheaber case, and the O'Sheaber case talks about equitable toll. So on that legal issue, she said it should have been withdrawn the first motion round. It certainly should have been withdrawn the second time the motion to dismiss was filed, when at the very least you understood that there was no tolling by the filing of the writ. But that's incorrect. We never agreed with that. We never agreed that the claim was time barred. Now, let me be clear. I think it was one of the first questions I was asked today. To this day, we do not believe the RICO claim was time barred. The O'Sheaber case and equitable tolling, which requires that the court delve into what happened in the underlying arbitration case to determine whether the actions of the defendants should equitably toll the ability to bring the RICO. That stream of our blood was never analyzed by the court. It was part of our… How much discussion was there of O'Sheaber? There was no discussion of O'Sheaber. It was briefed and was before the court in a motion to dismiss. The reality was we ended up arguing a motion to dismiss on a RICO claim when we got noticed that we were going to have an inherent powers in a 1927 argument. Well, the impression that the judge had was that you brought the RICO claim after it was time barred in order to try to get a federal hook with regard to what she considered to be forum shopping. That is what she said, and we believe that she was incorrect because she did not… There was no discussion and analysis of O'Sheaber. That is the crux of this issue. We had three strings to our bow with regard to the tolling of the RICO claim. She dispensed with two of them. There was no addressing, equitable tolling under O'Sheaber. Before you sit down, one final question. What I don't understand is that you filed an action or a summons in the state court, commonwealth court in 08. There was an arbitration that was reopened and a second arbitration. You lost it both times. What else is there for the judge to conceive of if you then, after that, bring a federal claim? It does sound like forum shopping, doesn't it? It is not forum shopping. Why did you bring the RICO claim far sooner than if there was one? We were waiting for the arbitration to wrap up so that Mr. O'Halloran could bring his claims in the arbitration. Because of the underlying actions… But no one was stopping you from bringing a RICO claim in before September 9 of 2008, correct? I'm sorry, if you could read. In other words, you could have brought the RICO claim before that. When you began to file your action in the commonwealth court, you could have brought a RICO claim in federal court at that time, could you not? We brought a RICO claim in September. You claim you have a RICO claim. You said it's a four-year statute of limitations and it began on September 9 of 2004. So then it was extended to September 9 of 2008, correct? That is correct. Why wasn't it brought before September 9 of 2008? Because there was a stipulation and an order in the arbitration that said all claims not subject to arbitration are told. There were competing rates filed by both the plaintiff here as well as the defendants, the client-inspector firm in the court of common police. When was that entered into? The stipulation? That was November 13, 2008. So that was post-September 9, 2008. Still two months afterwards. Two months and four days. Well, the stipulation just says whether the parties agree that they can proceed on the writ. It's not the writ told the statute. The point is that stipulation doesn't help you. That's the statute of limitations. If it's four years, you're out of luck. The stipulation only says whether the parties agree that the claims told by the filing of the writ can be prosecuted in the arbitration. The stipulation says, and again the stipulation is page 693 of the record, says that all claims will be stayed under the writs pending the outcome of the arbitration. But you didn't make any legal allegation in the commonwealth complaint in 08? There was no complaint filed in the commonwealth. No summons, I'm sorry. Yes, there was no complaint. And that's the important. There's only been one complaint filed by Mr. Hamlin against these parties, and it's the complaint that we're hearing on today. All right. Let's hear from Mr. Becker, then we'll get you back on the phone. Thank you. Thank you. May it please the court, Chip Becker here for the defendants, client inspector and Mr. Inspector and Mr. Klein. I would start the argument with the finding of the trial court that the plaintiffs here did act in bad faith when they filed the time-barred RICO claim. Is that a finding or is that a conclusion? Well, I think it's a finding. And I'm not sure that it makes a difference. That is what she believes. Well, it certainly makes a difference given the arguments that we've just heard because one of those arguments is essentially that there were no findings made that would support a conclusion of bad faith. Well, let's back up and look at what happened in the argument. First of all, it was abundantly clear to all parties that this was to be an argument about the question of whether sanctions were appropriate. Recall that the plaintiffs had voluntarily dismissed the complaint. I think I just gave you a softball, which you let go right past you. Was there or was there not a finding of fact made at the argument concerning forum shopping, which would be a basis for a subsequent conclusion in the order of court? Well, forgive me for not saying that, Your Honor. There clearly was a finding of fact on the issue of forum shopping. But I think that in addition, she also made findings of fact that and really findings of law. To go to Judge Hardeman's question earlier, that the RICO claim was time-barred, that it should never have been filed, that it should never have been maintained, that the lawsuit was intended to trigger not just federal jurisdictions but the district. So these are findings of fact made at the time of the argument. They've got to show they're clearly erroneous, right? They do. And they have not done that, certainly, before this court. And they didn't really do it before the trial court either. What they did was to concede that Morris v. Hoffa, Judge, as you put it, was the final nail in the coffin. They also contended, as they contend here, that there was an inevitable tolling of the statute of limitations with respect to RICO, which I think lies in the face of the plain law of RICO in terms of statutes of limitations. And a RICO claim, as you know, clearly said no later than when the party had actual knowledge of the injury. And there was no scenario where Mr. Adler did not have actual knowledge that he was writing checks later than the moment he was writing the check. In our brief, we said that was certainly no later than 2006 when he left the firm. Here it's been said that it was no later than September 2004 when he was writing checks. So the RICO claim under any scenario, and certainly under this court's law, was time-barred not by months but by years. But what about Mr. Rhodes' argument about O'Shyver? There's a continuing violation. Just because Hoffa puts them out of court, what about the equitable tolling aspect? So first, the RICO claim under the RICO case law, or the case law around statutes of limitations, this claim was long time-barred. There cannot have been a continuing violation beyond September 2006 when Mr. Adler left the firm. And it was time-barred by that point as well. Did the trial court analyze that? Or were you informed from the record that that was a non-starter? The trial court said in her joint legal argument that she viewed the RICO claim as frivolous. And I think embedded in that is a finding, factually or legally, I'm not sure. Again, it makes much of a difference. But she essentially ruled on the motion to dismiss when saying that a starting point, really a starting point for her imposition of sanctions, was that the claim was time-barred by 900 years and that she viewed it frivolous. She then went beyond that to say that, as we were discussing, that the claim never should have been brought. It certainly had not been maintained. And that it was filed for irreprochable purpose. The focus of the judge's concern during the hearing was partly on the basis for imposing sanctions under the inherent power as to Mr. Adler. And she clearly felt that that was appropriate and that there had been multiple exercises of that faith. But countering that, in her analysis, was her view that we all have proceeded under Rule 11. And her feeling that we should have proceeded under Rule 11 was, in her view, the basis for reducing the sanctions. I mean, the concept of Pensiero was that you should bring a motion for sanctions before the case is over. Isn't that correct? Yes. And so why would that not be? I realize that Pensiero was a different set of facts than here, but why wouldn't that be the best practice here as well? As we know, Rule 11 has had a very tangibly difficult history over the years. And it has become a very intense area of law and procedure. Looking at how Judge Wilson, I'll just be very frank with our analysis, looking at Judge Wilson has handled Rule 11 motions, she has denied them. And generally speaking, judges in the District of New Jersey have denied Rule 11 motions. This might have been the case because she said that if, indeed, there had been a Rule 11 application filed with the Safe Harbor letter, that Rule 11 could really have worked in this case. Yes, that may have been. And that's fine for her to say that, and we appreciate her saying that. But our analysis at the outset was that Rule 11 was a Rule 11 process. It was not going to trigger a withdrawal of the MECO claim against the lawsuit, which we felt to be fundamentally wrong on multiple grounds, both related to the merits as well as statutes of limitations. Second, that it was not going to trigger, based on our observation of how the judge here and how judges generally have been handling Rule 11, that it was not going to trigger a sanction. But in addition, the basis for our motion went beyond Rule 11 and did, indeed, sound in 1927, which we withdrew, of course, because we wanted to highlight that the focus of sanctions we thought ought to be on Mr. Hadley and not on his counsel, Mr. Rhodes, who just argued here. But that it also sounded very accurately within the inherent power, because what was going on here was something beyond the filing of a frivolous claim. And as you know, Rule 11 is essentially an objective analysis of the quality of a pleading. My question is, I realize this is not Rule 11. Should we follow the Pensiero rule in another context and apply it to inherent power or sanctions? That is, you have the sanction motion, and it's decided before the case is over. In this case, it was three months. It was three months. During this time, for all we know, Judge Walton and other clerks were working very slowly. What about the next case? What if it's 30 months? What happens then? Well, I don't know. I don't know. The case that we have here is a case where three months went by. The case was dismissed immediately, I think, that day, or at the most, the day after. We sent a letter to the judge urging her to consider the pending sanctions motion. Maybe 30 months presents a categorical different circumstance that calls for a different analysis. But on these facts, on these facts, especially in light of Cougar v. Gell, a Cougar and Gell, which makes clear that a court may consider sanctions even after a voluntary dismissal of the case, I think it was very appropriate for the judge to call the hearing and to consider what issue it actually sought for discretion and what are sanctions in this case. But it's clear here that the sanction is only against Mr. DeHavilland himself, is that correct? Yes, it is only against Mr. DeHavilland. And that is important with respect to the arguments that have been presented because the law firms are not part of this. In addition, regarding the notion that there needed to be an evidentiary hearing where the due process was somehow violated, it is difficult to grasp how a violation of the Fifth Amendment has occurred in a context where we moved the sanctions once, we moved the sanctions twice, there was a direction by the court to the parties to appeal if we're hearing on sanctions. In fact, that hearing was rescheduled because of a conflict I think that Mr. DeHavilland had. So there was a second email, a second direction to the parties to appeal. And then we had a very extensive hearing. And you, of course, have read the transcript that addressed these issues quite thoroughly. Your inquiry, I think, collapses into the question of how, of the quality of the judge's exercise of her discretion. And I think on one hand you have the, I'll call them the defense-specific factors, where, as the judge felt, there was a time-bar claim that should never have been filed, that should not have been maintained, and that was filed for a fundamental and proper purpose of jurisdiction in federal jurisdiction to get out of Philadelphia. And not just federal jurisdiction, but her court, her court in particular, the District of New Jersey itself, as she put it, was made a scapegoat. And she didn't like it, and she wanted to send a message there. But balanced against that, balanced against those defense-specific considerations, there are what I would characterize as the plaintiff. Excuse me. Those are the plaintiff-specific considerations. And balanced against that were what she considered to be the considerations that related to us, which were that we would not pursue Rule 11, which she felt to be appropriate. And therefore, she thought it would have worked. I disagree. But be that as it may, she was not going to award us. But it worked in the sense that they might have taken advantage of the safe harbor and we wouldn't be here. They might have, and that's what she said. That seemed to be her hope. That was her hope. Who knows? That's how it worked with them. I view this as a sanction on us, just as I view it as a sanction on them, because we're not the one writing the check. I'm sorry? We're not the one writing the check. I'm just saying that's how it worked. But there was judicial approval directed at both sides. There was, Your Honor. There was. And that is part of what we should consider. You got the impression Judge Wilson is saying, you know, why did you put me in the middle of this? Well, that and the answer is I didn't do it. It was Mr. Haviland who filed the lawsuit, and it was Mr. Haviland who maintained it. And by the way, Morris v. Hoffman was certainly the last nail in the coffin. But I think it's worth noting that the initial complaint doesn't articulate Mr. Haviland's complaint. Neither his complaint nor his amended complaint articulates a rationale that we are filing what is otherwise a time-barred claim because we take the position that we are allowed to file in a different federal court on the basis of the writ of summons that was earlier filed in Philadelphia County. The argument responding to Morris v. Hoffman was truly in response to Morris v. Hoffman. And if I had figured that out the first time around, I would have said it the first time around. It wasn't an immediate, and you know how this goes. So often arguments improve and arguments elaborate as time goes on. And so we cited Morris v. Hoffman in our motion to dismiss the amended complaint because we were able to reflect and develop a deeper analysis. But the time-bar here does not depend on Morris v. Hoffman. It depends on the underlying facts of this case, and the fact that there was no scenario in which Mr. Haviland did not know. You made a comment somewhat earlier. I thought that you said that you thought that the statute had passed in 06. Well, what we argued was that the statute of limitations with respect to RICO It would be 08, wouldn't it? It would be four years. That it began to accrue no later than the day Mr. Haviland left the firm because it was no later than that day that he wrote. Well, he's conceding it's earlier than that by almost two years. Well, I agreed, but by way of being cautious. So you're saying it would have expired in 2010, no matter what? It would have expired at the very, if he had written the check to some federal candidate before he left the firm. Was that your argument to the O'Shea everything, that there was a continuing violation, that the statute of limitations could have existed no later than the day he left the firm? Well, Jeff's has been arguing all along that there is this scenario where the statute of limitations for RICO did not accrue later than the day, it accrued no later than the day he left the firm. And even if you use September 2006 as your starting point, that brings me to the time order of September 2010. This case was filed two years after that. And I think Judge Wilson understood that. She moved it. She founded it. Judge Smith, she was concerned about other aspects of the case. And what I'm driving at is that with respect to the Rule 11 versus inherent power controversy or discussion, that while this case, the sanctions here do sound in Rule 11, that they also are very clearly inherent in inherent power because what's at issue here is not simply the fact that a time-bar claim was filed, but why the time-bar claim was filed and the way in which the plaintiffs have used and took advantage of not just the federal courts but the District of New Jersey. And against all of that, we have a $2,500 sanction which is nominal, which I would suggest respectfully does fall within the ambit of her discretion. All right. Thank you very much. Thank you, Your Honors. Mr. Rhodes. Thank you. Very briefly, one of the issues that has not been addressed is the fact that the order, and it was referenced in the argument you just heard, that the defendants were also sanctioned, they believe, by Judge Wilson. The order doesn't say anything about the fact that the defendants in the court below had some responsibility for this. That's silent in the order. But relatedly— But they didn't bring it to a federal court in New Jersey. I mean, ultimately, your client did. That's correct. But also— Let me make it clear that she reduced the amount of punishments. That's probably too strong a word, but she took into consideration some of her disagreement slash displeasure with the approach, and that caused her to reduce the award. She reduced the dollar amount of the award, but the words of the order are the problem. No one's reading in the public sees this order. And they don't see that it's a reduction of the award. They see language that says that plaintiffs, which included Mr. Haviland and the two law firms, when everybody agreed at the hearing, there was no attempt to sanction Haviland Hughes and the Haviland law firm. The order says plaintiffs defined as— Well, if everyone agrees that that's not right— Well, if everyone— It's only Mr. Haviland. Well, if everyone agrees that that's not right, I think then that's clear error in the order. Well, Mr.— Well, where? Where is clear error in the order? It says— We have an amended order here. I have an amended order, page 6 of the record. It defines plaintiffs on the first page of the order, four lines down. Plaintiffs, Donald E. Haviland, Jr., the Haviland law firm, LLC, and Haviland Hughes, LLC, collectively plaintiffs. So that's defining all three as plaintiffs. And then at the very end, before the decorator language, the court had a footer found in the record that Donald E. Haviland, Jr., only his name, was responsible for these actions. But above it, it says, plaintiffs acted in bad faith, vexatiously, wantonly, and for oppressive reasons. What does the decree say following the last line I just read? It says that the payment shall be forwarded—well, the defendant's motion for sanctions is granted in the amount of $2,500 to be paid to the defendant. What would any reasonable person get out of this order after reading the last line, having found on the record that Donald E. Haviland, Jr., was responsible for these actions, and then the decorator provision that says that he and he alone is the person to pay the amount to the defendants? I think any person reading this would say that Mr. Haviland, under this order, was required to write a check under that provision. But I think anyone else would also read it and say that the definition of plaintiffs includes all three. And so I think that that— Is that what you want out of today? I was going to say you want us to have an order clarifying, making crystal clear that only Mr. Haviland was sanctioned by the court and affirmed. Well, what I'd like to have is the order make it. That's what I'd like to have. If the panel is not inclined to do that, then I certainly would like an amended order that says that the findings were with regard to Mr. Haviland only and not to the law firm. I think that's—I would much prefer that as opposed to the current order that exists. And one other issue that Judge Ambrose raised with regard to O'Shyver, though, I think there might be a misunderstanding about what O'Shyver talks about. It's not about continuing conduct. What really cuts through it is why make the concession at the hearing before Judge Wolfson that you were barred by the statute of limitations? There was no admission to that. There was no admission. I said it was a good argument under Morris v. Hoffa, but we had other arguments in response to the statute of limitations. So it was a good argument. It was a fatal blow. A potentially fatal blow under that provision. But O'Shyver is important to argue. And I think, based on some of your questions, I'm not sure that you understand what we're suggesting O'Shyver says. O'Shyver is not about continuing conduct. O'Shyver talks about when a party asserting the statute of limitations has taken actions to prevent the party from pursuing its claim. What actions has the other side taken to prevent you from pursuing your claim? The arbitrations, are you going to say? In the arbitration, I was not counsel in the arbitration, but I talked to counsel in the arbitration. But the counsel in the arbitration below would testify that trying to pin down what was and was not in the arbitration was a very difficult task. And the important part of that is, under the agreement that was arbitrated, the claims factor firm had the ability to decide which claims were arbitrable and which claims weren't. So there was an attempt during arbitration to decide, okay, what is subject to arbitration and what is not. And the issue would be that counsel below and Mr. Haviland would testify that the fact that they couldn't pin down what was going on allowed the time to pass. If the statute of limitations began running the day Mr. Haviland left the firm, maybe that's an argument. But if, as you note, the statute of limitations began on September 9, 2004, then September 9, 2008 is the day. And when you say that it's on November 13, 2008, there was a stipulation. It's not the stipulation, it's the writ of summons that was filed within the four-year period of time. What happened on November 13, 2008, then? That was the stipulation that the writs of summons that had been filed in September would not be pursued until the arbitration was decided. Okay, and you brought no claim for Ferrico prior to September 9, 2008. But it's covered under the writ. It's covered under the writ of summons that was filed. It's covered under the writ? Yes. How? Because the writ tolls all claims that were held by Mr. Haviland against client inspector. It tolls all claims that then existed on November 13, 2008. If you don't have a claim, if 10 times 0 is 0, you've got 0. September of 2008, Your Honor. You're referring to November 13, 2008, you entered into a stipulation that preserves all claims that are here to form. No. The stipulation preserved the right to… What was the date of the summons? The date of the summons was September… The date of the summons was September 3, 2008. So the summons somehow protects you under a federal claim despite Morris v. Hoffa with regard to a RICO action? The Morris v. Hoffa is one of three arguments to defeat the RICO claim. So the filing of the writ of summons on September 3, 2008, told the claim, told all claims. Told all claims, even though you never brought that claim? Correct. How? What's the law for that? Pennsylvania rules. If we file a writ of summons… But this is one federal court. You've got a federal claim. You're not going to make a RICO claim in the state court, are you? Your Honor, at the argument, there was some confusion on my part, I'll be clear, but… And Steve Morawoski indicated to you that there was no way the state court was going to have jurisdiction over a RICO claim. Well, that's what he said, Your Honor, but it's clear that there is a… The judge's record said you refine arguments as cases proceed, but Taft v. Levitt, 493 U.S. 455-1990, says that state courts have concurrent jurisdiction over RICO claims. Sure they do, and all the defendants had to do was remove if you had added a RICO claim. So I don't know where we're going with this. I'm just answering the question as to whether there could be a RICO claim in state court. Today, my belief is that it can be. At the time of the argument, I was unclear of that, but having further research and refined, Taft v. Levitt says you can bring those claims. If you have a claim, you've got to bring it within the proper time. Correct, and Your Honor, we did, pursuant to the writ of summons, not the stipulation. The stipulation just says… What notice was possibly given to the other side on September 3rd of 2008 that you had a RICO claim that you were going to bring pursuant to that writ of summons? There's no provision in the writ of summons as to what claims you're going to bring. It just says you've been sued, and under the rules, they can rule, file a complaint, depress it. But instead, there was a stipulation to stay, though. All right, well, thank you both. Thank you. Thank you very much. Well-presented arguments will take the matter under advisory. Thank you.